The final case on the call this morning is Agenda No. 23, Case No. 123-201, Wengert v. Hradisky. Counsel, when you're ready, you may proceed. May it please the Court. Michael Newman was 22 years old. State your name, please. Good morning. My name is Nick Nepustil, and I represent the plaintiff in this matter. Thank you. Noah Wengert, a minor, by his mother and next friend, Cassandra Wengert. I apologize. Michael Newman was 22 years old when he passed away. His son was three years old when he passed away. Now, I'm not here today to argue to you that Michael Newman doesn't share in much, if not most, of the responsibility for his overdose and for his death. We all have to make choices, and those choices include the decision not to take drugs. However, the decision of drug dealers to aid in a person's addiction and to profit off of that person's addiction is unquestionably an immoral choice. It's unquestionably an immoral act. I think one of the important things for this Court to keep in mind here today is that we are talking about crimes giving rise to liability and not necessarily accidents. Whether to knowingly participate in the illegal drug market is, by definition, an intentional and a knowing act. You decide whether or not you're going to participate in the illegal drug market. And when you make that decision, you make that decision with the presumption that you know the consequences. Now, reasonable minds can disagree on how to apportion fault in these cases of accidental overdoses. Reasonable minds can disagree on how our legislature should approach this problem and whether drug dealers should have this liability imposed. However, the question presented here for us today is not whether the legislature should have passed the Drug Dealer Liability Act. The question presented for us here today is whether the legislature could pass the Drug Dealer Liability Act. Whether the legislature has a constitutional authority or if there is a substantive due process right that somehow limits that inherent police power. Now, as this Court has stated many times, in order for the police power to be valid, the statute needs to bear a reasonable relationship to the public interest sought to be protected. And the means adopted must be a reasonable method. Now, unlike the vast majority of cases or discussion that's taken place with respect to market share liability in the past, here, the legislature has a legitimate interest in both deterring illegal conduct and also completely undermining the illegal drug market. Unlike the pharmaceutical industry, which obviously saves lives and is necessary for our society, the illegal drug market does not provide any benefit to our society. The only thing the illegal drug market provides is a catastrophic cost. Because of these facts, it's reasonable to use economic disincentives to overcome the economic incentives one has to enter the illegal drug market. The very fact that we have statutes on the books, it's unquestioned that it's illegal to sell heroin, it's illegal to sell cocaine, and yet people choose to do it anyways. And they choose to do it anyways because of the tremendous amount of money that you can make when you engage in this black market. Counsel, doesn't it offend the basic notions of due process to find that a plaintiff can get damages from a defendant even when there's no proof that the defendant actually caused the plaintiff's injury? I don't think it does. And the reason it doesn't is because this Court has for more than a century held that one does not have a substantive due process right in common laws, rights, and remedies. And that does include causation. The same issue came up many years ago in 1919, but before this Court in Gary v. Iger, where the defendant made the same argument. We didn't do anything to cause this specific injury. And the Court held that there was no due process right to this causation element. This same issue came up when the Connecticut Supreme Court had to decide whether or not a statute that merely required a showing that one had sold liquor to an intoxicated person, but that there was no requirement that that act was a proximate cause or even a but-for cause of the person's injury, of that plaintiff's injury. And so in this Connecticut case, we have the same situation where the defendant did something, had wrongful conduct, but that in many cases liability could be imposed when that wrongful conduct was neither a but-for cause nor a proximate cause. And in that case, the Connecticut Supreme Court considered the issue and went back to the fact that the legislature has broad police powers in determining how to regulate these dangerous industries. That's true, counsel, but does it go a little too far when the proof of actual causation on the part of someone else is not a defense? I mean, does that take it to a bridge too far? I don't believe it doesn't, and the reason because it's the legislature's decision on whether or not simply participating in the market justifies the imposition of liability. On the question of whether proving that someone else caused the harm, I think it's important for this court to keep in mind, and as the trial judge in this case actually also noted, that the Drug Dealer Liability Act does provide the defendant with a mechanism by which he can file a counterclaims for contribution and identify these other market participants. This does also further the legislature's interest in, it's very hard for a plaintiff to penetrate the black market. By definition, drug dealers are going to take steps to hide where they get their drugs from, who they're selling them from. In this way, the incentive given to an actual active market participant to identify other market participants furthers the legislature's goal, which is shining a spotlight on this devastating industry and bringing those people to account. I don't think it's a question of whether we have this gut feel of, oh, is this a bridge too far, or does this offend our basic, basic notions of fairness? I think we need to look to whether the scheme adopted by the legislature is reasonably calculated or is a reasonable means by which to achieve their objectives. Here, the imposition of massive liability has an economic incentive, a disincentive for joining the market. Another important goal of the legislature is that the purpose of this act is to ensure that plaintiffs have a source of recovery, that victims of the illegal drug market have a source of recovery. We can talk about whether actual drug users are to blame or the responsibility of drug users, but one person here who is unquestionably blameless is Noah Winger. His father wasn't at his kindergarten graduation. He will not be at his high school graduation. He won't be at any of these life's milestones. This is a tremendous loss for Noah Winger. He's going to grow up without a father. Now, Michael Newman is certainly at fault for his death, but the people who provided the drugs are at fault. The people who allowed the market to exist in the first place are at fault, and this is a systemic problem. Because this is such a systemic problem with such systemic costs, it's reasonable to hold all those who make the voluntary and conscious choice to enter this illegal market responsible for all of its consequences. It's not arbitrary to hold that drug dealers should bear the burden of the illegal drug market they contribute to instead of innocent blameless victims. Now, when we're talking about this fundamental due process concern of whether the lack of causation is an absolute bar, I think it is important to also look at the fact that it's not just causation that has been a fundamental element to our common law in many actions. It's these other elements as well, duty and breach. When the Workers' Compensation Act first came out, similar protests could be lodged of, doesn't it offend our fundamental notions of fairness to impose liability without fault? That an employer who did nothing wrong and wasn't negligent could be required to pay for the injuries sustained by his workers. And in those cases, it's been held repeatedly by this Court that no, there's no due process violation here, and there's no due process right to demand that these other elements remain unchanged for the defendant's benefit. There's no reason for the causation element to be treated any differently. And in fact, I think underlying this workers' compensation analysis is the recognition that, well, these employers have made money off of the fruits of their employees' labor. A lot of the profits, or all of the profits that these employers make is because of the efforts of their employees. So therefore it's fair to make them pay for the injuries their employees suffered on the job. And we do have this same economic backbone to the Drug Dealing Liability Act, which is we're talking about a class of individuals who has profited off of this illegal drug market. And unlike legitimate businesses, which typically don't leave such a devastating effect, one of the effects of this profit-making endeavor is that it leaves a trail of victims behind. And like in the workers' compensation decisions, where the basis of liability is the fruits of labor, we have the same thing where, just by market participation, our legislature has determined it's appropriate to justify the imposition of liability for that industry as a whole. And again, we've had this same, this court reached the same decision in the Workers' Compensation Act with respect to a plaintiff's claim that not being allowed to claim pain and suffering or the permanency of his injury was a due process violation. And again, this court rejected that rather quickly and said, no, you have no substantive due process rights to common law elements. I mean, that case was Mushan. And what we see, the chain of these courts' opinions in Garrity on the causation elements, in Grand T.W.R. on the duty of breach elements, and in Mushan on the damages elements, is that there is a fundamental difference in our analysis between a constitutional right and a common law right. So when we turn to this court's decision in Smith in declining to adopt market share liability as a matter of the common law, when this court is discussing arbitrary results or unfair results, it's making a policy determination based upon common law rights. It's making that policy judgment that, in this case, the legislature has already made. When the legislature passes a statute, it pronounces Illinois public policy, and it's pronounced it here. And thus, our analysis has to be entirely different. This court, of course, does have the duty to strike down arbitrary or unreasonable actions. But I would urge caution in especially the substantive due process realm of allowing that analysis to instead substitute this court's wisdom for the wisdom of the legislature. I think that's something that is especially easy to do in the realm of substantive due process, and it's an area where it may be easy for courts to overstep a little bit too far in that line of judging the wisdom of the legislature instead of simply performing this rational basis analysis of whether we have this reasonable relationship. Now, one issue I want to raise is that in these due process cases, there's a difference between substantive due process and procedural due process. And the defendant's reliance upon Henderson and Todd is improper for this reason. The U.S. Supreme Court makes clear in the Communist Party case that we only apply the analysis of a presumption when the fact that underlies that presumption is essential to judgment. In both of those cases, the jury was instructed to assume a fact in a manner that affected judgment. Here, like in Communist Party, the legislature has completely taken that issue off the table. Whether or not the defendant was an actual approximate cause of the specific overdose, the legislature has said is irrelevant. And so it's not a procedural due process issue, and that is why we can't rely on Todd v. Henderson. This distinction that we must draw between procedural due process and substantive due process is the same reason why reliance on the Philip Morris v. USA case by the U.S. Supreme Court is inappropriate in this case. The Supreme Court made clear in that case that its entire decision rested on procedural grounds. That it was discussing procedural due process, specifically that the defendant did not have an opportunity to defend all the charges against him. In that case, the lawyer stood up on closing and said, and just think of all the other people you've seen smoking and imagine how much other harm has been caused. That's a fundamentally different thing than what would happen at trial in a case of the Drug Dealer Liability Act, because the plaintiff has to prove participation in the illegal drug market by clearing and convincing evidence, so the defendant will have an opportunity to directly rebut those charges. And the plaintiff is claiming, in this case, only compensatory damages thus far. And so the defendant has an opportunity to rebut and challenge all the damages claimed against him. So that takes this case, I think, outside of the U.S. Supreme Court's holding in Philip Morris. Counsel, you mentioned that under the workman's comp, causation is removed, but actually negligence isn't removed, right? Or is it the opposite? They don't remove causation, but they do remove negligence. Your employment has to be the cause of your injury. Yes, so they remove the negligence elements. Of course, the workman's comp statute does retain arising from the course of employment, which is a modified causation element. The statute in the Illinois case law that did remove that causation element was the Dramshaw Law that was then in effect in 1919, when Darity v. Iger was decided. And I do understand that that is a very old case. But that analysis still holds true based on this court's analysis of other common law elements with respect to the Worker's Compensation Act. And also, I think the Pierce v. Albany case should be a strong persuasive authority for this court because the issues presented are similar. Now, before we even get to this constitutional question on specifically the area of liability provision, I do want to stress that we do need to determine whether or not the plaintiff was required to show proximate cause with respect to what I've called the direct liability provision. Now, in the briefs before this court, the defendant hasn't argued that the plain language of that statute requires the plaintiff to show proximate cause. And specifically, when we look at 740 ILCS 57-25C, that provision provides the damages that are available to a plaintiff under both the area liability provision and the direct liability provision. To accept the trial court's analysis here that the direct liability provision reads in this proximate cause element that is not listed in the statute would render that this damage statute operates, the exact same language operates differently with respect to two different classes of defendants. This makes the statute largely unworkable in a trial where the Junkier Liability Act does allow a plaintiff to sue any number of defendants, and assuming constitutionality survives, we could name someone under the area liability provision and someone under the direct liability provision and prosecute both in the same trial. It simply is unworkable for the damages available to that plaintiff to be different depending on which type of liability they proved when the operational damages provision is the exact same. The only reason that the defendant proffers that this court should not accept that argument is that, well, if the direct liability provision doesn't contain proximate cause, then it's unconstitutional too. What makes that provision different than the area liability provision and I think addresses some of the concerns that have been voiced here so far is, is it a step too far to say that there's no causation required at all? Of course, our position is it is not. But that argument, I think, loses a lot of its muster when looked at the direct liability provision. The direct liability provision applies to situations where the person actually sold drugs to the victim. Now, I see that my time is almost up. It is up. It is up. Thank you very much. Okay. You can come back and reply. All right. Thank you. May it please the court, counsel. My name is Kyle McConnell and I represent Patsy Rudisky as the special administrator of the estate of Kevin Jadczyk. This case before you presents the opportunity for the court to further establish the limit on a legislature's police power and hold that Illinois residents' substantive due process protections protect them from the truly arbitrary and unreasonable exercise of that police power. Now, in so doing, the principles that were upheld by this court in Smith v. Eli Lilly can be reaffirmed and applied in the context of due process. I think it's important to be clear about what standard this statute must be reviewed under. It is not our position that it was not enacted pursuant to the legislature's police power. As we well know, the rational relation test is applied to statutes enacted pursuant to that power. However, I think it's important to recognize that the test of whether a due process violation has occurred is similar, if not the same, as the test of rational relation that is applied to a statute passed under the police power. The reason why is because this court has specifically held that due process requirements prevent the arbitrary and unreasonable exercise of the legislature's police power. Now, by that same token, the rational relation test requires that a legislature seeking to address a public interest and protect that public interest must adopt means that are a reasonable way of achieving that objective. So if a law results in arbitrary and unreasonable outcome, which is what occurs when causation in fact and proximate causation are eliminated as a necessary showing, then that, by definition, is an unreasonable means of achieving the objective. To be clear, we are not challenging the legislature's ability to address the scourge that is the illegal drug market. But what we are challenging is that there is a limit on the police power and the method by which the legislature goes about addressing that measure. I'm not sure if you agree. In your briefs, you speak at length about presumption issues. And in the Oklahoma case, they talk about ideas of substitute theory of causation. Would you agree that there is no causation requirement in this statute? That is correct, Your Honor. There is no requirement that a plaintiff, in order to sue a defendant, must show that that defendant was responsible either as a cause in fact or as the proximate cause of their damages. The hypothetical we posited in our brief is a perfect example of that. And to be clear, this is a facial challenge. And I recognize the difficulty of mounting a facial challenge. But it's not quite so difficult in this case because of the elimination of cause in fact and proximate causation. Essentially, it encourages plaintiffs to go shopping for defendants instead of seeking the person who was directly responsible for the injury they suffered. And so that's why I think this court's analysis in Smith v. Eli Lilly is so relevant to the case at hand. It's not a question of whether the statute was wise or whether it was desirable for the legislature to combat the illegal drug market. That is undisputed. But what this court did in Smith v. Eli Lilly is they addressed whether or not to adopt market share liability in Illinois. I don't think anyone would dispute that the plaintiff in that case should not have been entitled to recover for her damages. But the question is, what rights does a defendant have in defending against cases that are brought against them? And so the court's analysis in Smith v. Eli Lilly really delved into and is the most in-depth discussion of the vital role that causation plays in our system of justice. Vital means absolutely essential, must be present. And in doing so, the court explained that it is an unfair system to impose liability solely due to the ability to pay. And it also indicated that removing causation in fact is too great a deviation from a tort principle, which we have found to serve a vital function in the law, causation in fact. May I direct you to the section of the statute where it appears the legislature was engaging, at least the Smith case perhaps, or the whole idea of market liability. In the section of the legislative findings, the legislature discusses market liability and points to cases in which the idea being that that provides civil recovery for plaintiffs who are unable to identify the particular manufacturer of the product that is claimed to have caused them harm, allowing recovery from all manufacturers of the product who participated in that particular market. Basically the idea of how Smith described it. In the finding, the legislature goes on and says, the market liability theory has been shown to be destructive of market initiatives and product developments when applied to legitimate markets. Because of its potential for undermining markets, this act expressly adopts a legislative crafted form of liability for those who intentionally join the illegal drug market. So in other words, the basis, the concerns in the Eli Lilly case was about legitimate businesses and a legitimate market, where the court was concerned that without causation that would be destructive of sort of basic rights there. Specifically, the legislature said, we're going to use that destructive nature and apply it to an illegal drug market. Right? Is that exactly what they're saying? They're taking the Smith case and using the Smith case for why they're doing what they're doing. Is that right? Yes. They are. And by the legislative findings, they attempted to enact or explain that they were enacting a form of market share liability. And certainly this court recognized in Smith v. Eli Lilly that maybe that type of theory of liability is more appropriately within the legislative domain. And specifically the distinction that the statute's taking is a legitimate market and an illegal market. And that they're going to be treated differently. So let me ask you this. As you indicated, the rational basis analysis, and I assume you're not suggesting that a drug dealer has some kind of protected interest at all. It's a two-fold test then in terms of rational basis. We must determine whether there is a legitimate state interest in the drug market. And if so, whether there is a reasonable relationship between that interest and the means the legislature has chosen to pursue it. So the statute is very interesting, very clear, sets out its purpose and its findings. It says the further purpose of this, there are a number of reasons. I mean, they state a lot of things. But a further purpose of this act is to shift to the extent possible the cost of damage caused by the existence of the community to those who illegally profit from the market. A further purpose is to establish the prospect of substantial monetary loss as a deterrent to those who have not yet entered into the illegal drug market. And then finally, as we were discussing, there's discussion about the idea of market liability, that imposing liability to those who have not yet entered into the market based on the concept of a market liability theory would be destructive to an illegal drug market. Those are just some of the purposes that the statute sets out. So the first question we have, and I think the burden that you have, is to say are these not legitimate state interests? Yes, they are legitimate state interests. And then the second question is, is there a reasonable relationship between that interest and the means the legislature has chosen to pursue it? They've chosen to pursue the fact that the market is driven by those who are profiting a great profit based upon the harm done to individuals in the drug market. And so rather than looking at the individual, they were looking at the larger community and the destruction that is caused by the sale of drugs. Correct? Yes. And why is that unreasonable? Well, the court has declined to do so today. However, what this court's role is, is to serve as a vanguard against overreaction by the legislature, which can infringe upon a defendant's due process rights. So it's not that the legislature did not have a legitimate interest in attempting to destroy the illegal drug market. It's that the means by which they have attempted to go about it, which is to remove actual cause and fact and proximate causation, is a step too far in that it infringes upon a defendant's due process rights. And the reason it infringes upon a defendant's due process rights is because by removing a plaintiff's requirement to prove that the defendant was the cause and fact, or the proximate cause of their damages, results in a wholly arbitrary and unreasonable exercise of that police power, which this court's jurisprudence has repeatedly held is outside the jurisdiction of the state. Why can't the state regulate this illegal market? The state can regulate this illegal market. And in fact, they attempt to do so via the direct liability provision, which the lower court did not strike down as unconstitutional. And they've enacted various other provisions within the Drug Dealer Liability Act to do so. However, it's the specific area liability provision that oversteps the bounds and infringes upon a defendant's due process rights in their attempt to regulate the market. So I think it's important to separate that, yes, they are entitled to regulate the market and attempt to destroy an illegal market that affects the public's health and well-doing. However, they still have to respect a defendant's due process rights, because that's entitled under the Drug Dealer Liability Act. How do you compare this to theories of product liability, when there is causation, but if you're in the product liability chain, despite your conduct, you could get pulled into the case? Well, Justice, there still is a connection there in the product liability realm. And actually, this goes to opposing counsel's argument with the workers' compensation realm, as well as the dram shop realm. In all three of those examples, there is a connection. There is a connection between the defendant that was brought before the court and the plaintiff. Now, while they may not have to show that the manufacturer was negligent, given the strict liability nature of product's liability, they still have to show that the plaintiff was injured by a product manufacturer or in the chain of distribution of the defendant they've brought before the court. The most easy way to exemplify the absurdity of this statute is to consider it within the context of the court. In the realm of the Dram Shop Act, under the Dram Shop Act, a person who becomes intoxicated due to an establishment who serves liquor over-serving that person, and then goes out and injures someone, well, that injured person is entitled to sue the establishment who over-served the intoxicated driver. But you cannot go down the street to an establishment on the corner who did not over-serve that intoxicated driver, and sue that establishment because they participate in the alcohol-serving market. Is there anything illegal about the alcohol-serving market? Well, there would be something illegal about over-serving an individual who should not be served and then goes out and commits a crime, potentially. And the person, the bar owner down the street, would that person have that kind of liability? Probably not. No, they would not have that type of liability. And of course my question is, different kinds of markets, right? Legal markets, illegal markets. Yes. Can they be treated differently? Yes, I think they can be treated differently, but what cannot be treated differently is the due process protections provided by the Constitution to defendants. Defendants have due process rights regardless of whether they have engaged in a criminal activity or a non-criminal activity that may subject them to civil liability. And that represents an example of the absurd results that can result. The defendant who was responsible, at least for providing the illegal drugs which caused the plaintiff's decedent's overdose, was in the case, but unfortunately was judgment-proof and later voluntarily dismissed. And that's what I mean when I say when you remove cause and fact, and you remove proximate causation from necessary elements before you hold a defendant liable, you infringe upon that person's due process rights because it results in a fundamentally unfair and arbitrary result. And that's why we so heavily rely upon this Court's decision in Smith v. Eli Lilly, because throughout that decision this Court made clear that if the proper defendant is not brought before the Court, then it is an unfair result. The bar that serves the first drink legally is also subject to lawsuit under the Ramshackle Act, are they not? Yes. And again, however, there still is that connection between the defendant the plaintiff is bringing before the Court and the plaintiff's injuries, and that is they actually served them alcohol. So, Oklahoma addressed this question in Steve v. Bain Hall, it was the Oklahoma Appellate Court, and actually the Supreme Court decision in Oklahoma of Case v. Fiberboard is very similar to this Court's decision in Smith v. Eli Lilly, in which the Oklahoma Supreme Court also chose to reject market share liability as a judicially promulgated theory of liability. And I understand Justice Tice's question in the respect that in Smith v. Eli Lilly this Court's purview was to determine public policy, whereas with the Drug Dealer Liability Act the purview of determining public policy is within the legislature. But we are positing that the purpose of the Drug Dealer Liability Act and the legitimate interest that sought to be protected by the legislature is not an issue in this case, nor are we contesting that it is a proper interest for them to seek. What we're contesting is that they have gone a bridge too far in order to enact that purpose, because there is a limit where the legislature's police power ends, a defendant's due process protections can begin, and they have veered into the territory of a defendant's due process rights under both the Illinois and U.S. Constitution. Is there any indirect liability statute that you can envision that would be constitutional in this context? I mean, we've heard all about the obvious reason that the legislature is doing this, right? They may not have done this one, they're going to do the next one, right, and maybe this will be a deterrent. So how would the legislature enforce that purpose in a constitutional statute? Well, I think that the legislature has to accept that they can enact legislation that combats what they see as a public health concern, but there is a limit to what they can do. How would it read to get to the purpose of what this statute was meant to do? It would allow, so the difference between this statute and a lot of what the common law, the legislative findings even refer that there are civil theories of liability that could be brought to this type of action, but a primary difference with this is that they allow for many other categories of damages to be recovered. But to answer your question directly, they would be able to enact a statute that says you are entitled to sue anyone who has provided you drugs that cause the injuries which you are seeking in the suit. I mean, that is a vital function of our law, and the reason it's a vital function is because due process laws are not just one law, they are two laws, and both of our constitutions protect defendants from this unreasonable and arbitrary action. And maybe it's impossible, but what you just proposed would not have the same effect that the legislature was trying to promulgate was saying, you know, this is a tough area to find out who's doing what, we know they're doing it, they should be entitled to damages as a deterrent, right? That's really what's going on here. It is. And unfortunately, you may be right, it may be impossible for them to enact the full amount of liability that they're seeking to do, but just simply because it is impossible does not mean that a defendant's due process rights can be ignored in seeking to justify the end which the legislature was seeking to do here, which was a denial. Your response is that whether we can do it or not, whether they can do it or not isn't the question, it's whether it's constitutional or not at the end of the day. That's absolutely our position. I see my time has ended. I appreciate it, and we would ask that you affirm both rulings of the trial court. Thank you. I do think that what defendant is not arguing here and has not argued before you today is largely dispositive. There has been no argument, and defense admits that the direct liability provision does not contain approximate cause requirements, and that was the basis for some of the judgment being granted. Instead, the only argument is, well, if there's not approximate cause requirements in the direct liability provision, it must be unconstitutional. Then we do have, in questioning about the Dram Shop Act, the admission that, well, yes, if they served the drink, even if it wasn't illegal, there could be liability. By definition, in the direct liability provision, this is a person who has actually sold the individual drug user drugs. Now, an overdose typically doesn't happen in isolation. I know there's an urban legend, and I'm sure it does happen in life, where someone takes drugs for the first time, and they die. But the truth of this struggle our society is facing is that a lot of individual drug users have long and intense struggles with addiction that eventually end in overdose, that eventually end in their death. And what the direct liability provision provides for is that the very people who profited off of that addiction, who fed that addiction that ultimately led to that death, are responsible. That's not a bridge too far, and that's not arbitrary. So to the extent that the direct liability provision admittedly doesn't have approximate cause requirements in it, and this is the only basis by which defendant claims the direct liability provision itself is unconstitutional, is that it's a bridge too far that there's no connection, that argument must fail. In the case of substance abuse with alcohol, could a family of the decedent, because he drank too much alcohol, sue the manufacturer of the whiskey or the beer? On a big, I don't think they could under, there may be a way to try to do that under a common law theory. I think as our common law stands now, that there wouldn't be an ability to do that because there's still that causation requirement. Now, as opposed to the case with liquor, a legal industry here, the legislature has made the determination that illegal drugs should be treated differently. And that decision is reasonably related to their interest in undermining that market and to providing a source of recovery. Of course, both liquor and illegal drugs can cause addiction. Both liquor and illegal drugs can cause deaths. But our society and through our legislatures has made the decision that liquor is going to be legal and illegal drugs are not. And I think that that distinction justifies treating those two classes of persons differently. The defendant also raised that this court's concern and really the fundamental, what strikes at the fundamental claim of this case is that liability should not be imposed simply because there's an ability to pay. And that is true, but that is not what's happening here where liability is imposed simply because of an ability to pay. Liability is imposed because of wrongful conduct. And especially in this very case, wrongful conduct that actually contributed to Michael Newman's addiction and ultimate demise. This isn't a case where I went down to the courthouse and found someone who had been convicted of cocaine distribution and just sued a longer list of people like what happened in the Oklahoma case. This is a case where Kevin Jatzak was his best friend's stepfather. Kevin Jatzak was someone that Michael Newman had known for a long time, had lived with in the past. Kevin Jatzak is someone who had employed Michael Newman in the past. Michael Newman was 22 years old when he died. In a lot of ways, he's still a kid. And Kevin Jatzak was the adult in the room. He was the adult in the room that, if we were to believe the testimony that's been proffered, that contributed to this problem. That not only actively sold drugs to Michael Newman directly, that at least there's evidence that appears to have been providing drugs to Simone Holda. And based on the testimony we have in this case, this is a house where there is a fairly large-scale drug operation going on. We have people going up and down the stairs repeatedly after Mr. Jatzak brings a package upstairs. This isn't a case where it offends our fundamental feelings of due process. This isn't a case where there is no relationship whatsoever between the plaintiff and the defendant. This is a case that in many ways serves as a textbook example of why the Drug Deal and Liability Act is necessary. Michael Newman passed away, and Simone Holda said he took his heroin out of his safe. There's never going to be any way for us to question that statement. Michael Newman passed away, and the crack propane that contributed to his overdose, they said, oh, we got it. But here you don't have to have a nexus between the two under the statute. We don't, but if the sole reason why we believe the statute is unconstitutional is that it allows an extreme position for there not to be a nexus, on this facial challenge, I do think it's appropriate to consider the actual facts of this case. Because this case is a constitutional application of these principles, and there are many other cases that could be constitutional application of these principles. I think to say solely because there may be cases where there's absolutely no nexus, and someone in Chicago, someone in Springfield, that that might offend justice, I don't think that analysis is appropriate on this facial challenge, and that the legislature, for these reasons, the legislature's decision to impose this type of liability was reasonable to accomplish their state goals, unless there are any questions. Seeing none, thank you. Thank you. Case number 123201, Winger v. Rudisky, will be taken under advisement as agenda number 23. Mr. Nepesteel, Mr. McConnell, we thank you for your arguments today.